COMMISSIONER OF REVENUE SERVICES *v.* DAVID J. PESKA, EXECUTOR (ESTATE OF ELISE P. WILLIAMS), ET AL.
(14211)

PETERS, C. J., SHEA, CALLAHAN, BORDEN and F. X. HENNESSY, Js.

Argued April 30—decision released August 13, 1991

*Robert L. Eddy, Jr.,* tax attorney II, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Albert E. Sheary,* first assistant commissioner of revenue services, for the appellant (plaintiff).

*Frank S. Berall,* for the appellees (defendants).

*Frank S. Berall* filed a brief for the Connecticut Bar Association, Estates and Probate Section, as amicus curiae.

F. X. HENNESSY, J. The sole issue in this appeal is whether a partial release in 1942 of a pre-1942 testamentary general power of appointment is a tax-

able transfer as contemplated by General Statutes §§ 12-345c (a) (2)[1] and 12-341b (d).[2] The plaintiff, the

[1] "[General Statutes] Sec. 12-345c. TAXABLE TRANSFER MADE, WHEN. For purposes of the tax imposed by this chapter, a decedent shall be deemed to have made a taxable transfer of any property with respect to which (a) a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will, or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be taxable under the provisions of subsection (c) or (d) of section 12-341b; but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if such partial release occurred before November 1, 1951, or if the donee of such power was under a legal disability to release such power and such partial release occurred not later than six months after the termination of such legal disability; or (b) the decedent has at the time of his death a general power of appointment, created after October 21, 1942, irrespective of whether he has exercised such power of appointment, or with respect to which the decedent has at any time exercised or released such a general power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be taxable under the provisions of subsection (c) or (d) of section 12-341b. A disclaimer or renunciation of a general power of appointment shall not be deemed a release of such power. For purposes of this section, the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised; or (c) the decedent (1) by will, or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent such property would be taxable under the provisions of subsection (c) or (d) of section 12-341b, exercises a power of appointment created after October 21, 1942, by creating another power of appointment which can be validly exercised so as to postpone the vesting of any estate or interest in such property, or suspend the absolute ownership or power of alienation of such property, for a period ascertainable without regard to the date of the creation of the first power."

[2] General Statutes § 12-341b provides in pertinent part: "The transfers enumerated in section 12-340 shall be taxable if made . . . (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. Such a transfer as last mentioned shall include, among other things, a transfer under which the decedent retained for his

commissioner of revenue services for the state of Connecticut (commissioner), appealed to the Superior Court from an order and decree of the Probate Court of the district of Clinton finding that the interest of the decedent, Elise P. Williams, in the Charles Dards trust (trust) was not subject to the Connecticut succession tax. The trial court affirmed the order and decree of the Probate Court and dismissed the commissioner's appeal. From that decision the commissioner appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. We affirm the judgment.

The relevant facts are not disputed. On January 3, 1921, Charles A. Dards, the decedent's grandfather, executed a will that established a trust, the net profits and income of which were to be paid to the decedent during her lifetime, and empowered her, upon reaching the age of twenty-one, to dispose of the trust remainder in fee by her will "among such persons and in such proportion and manner as . . . she may desire." In the event of the decedent's failure to exercise her power of disposal, the Dards will provided that the remainder would pass to the decedent's lawful issue living at the time of her death.

On December 24, 1942, the decedent executed a partial release of the power given to her by her grandfather's will, reserving the right to dispose of the remainder of the trust estate by her will only to persons and corporations within a designated class. At the time of the decedent's death on November 30, 1984, the value of the trust remainder was $211,000. In her will, the decedent partially exercised her reduced power to dispose of the trust estate by appointing a total of

life, or for any period not ascertainable without reference to his death, or for a period of such duration as to evidence an intention that he should retain for his life (1) the possession or enjoyment of, or the right to the income from, the property . . . ."

$10,000 to two individuals. The balance, $201,000, passed to her issue under the default provision of her grandfather's will.

On January 10, 1986, the defendants, the executors of the decedent's estate, filed a succession tax return reporting her interest in the trust as a nontaxable special power of appointment. The commissioner, rejecting the defendants' characterization of the decedent's interest, maintained that it was subject to the succession tax. This appeal is the result of the trial court's affirmance of the Probate Court's determination that the decedent's interest in the trust was exempt from succession tax.

The commissioner's argument that the decedent's interest is subject to the succession tax focuses on her retention of a life income interest in her grandfather's testamentary trust, when she partially released her general power of appointment over the remainder of the trust estate. This retained life income interest, according to the commissioner, prevents the application of the exemption from succession tax of partially released general powers of appointment otherwise provided in § 12-345c (a). The commissioner contends that a reading of § 12-345c in conjunction with § 12-341b (d), to which § 12-345c refers, requires the conclusion that the decedent, by retaining her life income interest, became a transferor for succession tax purposes at the time she reduced her general power of appointment. We are not persuaded by the commissioner's argument and disagree with his interpretation of the statutes in issue.

Section 12-345c, which was modeled after § 2041 (a) of the Internal Revenue Code,[3] provides in subsec-

---

[3] "[Internal Revenue Code] § 2041 [1982] POWERS OF APPOINTMENT
(a) IN GENERAL
The value of the gross estate shall include the value of all property.

tion (a) (2) that, for succession tax purposes, a decedent shall be deemed to have made a taxable transfer of any property with respect to which a general power of appointment, created on or before October 21, 1942, is exercised by the decedent by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be taxable under the provision of subsections (c) or (d) of section 12-341b. Section 12-345c (a) (2) also provides, as does its federal counterpart, that if a general power of appointment created on or before October 21, 1942, has been partially released prior to November 1, 1951, so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment and therefore shall not be subject to the succession tax. See *Ellis* v. *United States,* 280 F. Sup. 786, 793 (D. Md. 1968) (stating that "[i]n enacting § 2041, Congress clearly intended to permit the donee of a general power of appointment . . . to escape estate tax liability even though exercising the power, provided that he complied with the provisions of the statute as to partial release within the time specified"); *Estate of Anna J. Lombard,*

---

(1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942

To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

(A) by will, or

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive; but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

(i) such partial release occurred before November 1, 1951 or

(ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability."

46 T.C. 310, 317 (1966) (stating that "[t]he statutory purpose of the partial release provisions in section 2041 (a) (1) (B) was to provide a tax-free shelter for donees of powers who disabled themselves from exercising a power for the economic benefit of other than those in the exempt class").

We have consistently held that when our tax statutes refer to the federal tax code, federal tax concepts are incorporated into state law. *Skaarup Shipping Corporation* v. *Commissioner,* 199 Conn. 346, 351, 507 A.2d 988 (1986); *Harper* v. *Tax Commissioner,* 199 Conn. 133, 139, 506 A.2d 93 (1986). That principle is no less true when the language of one of our tax statutes is nearly identical to a federal tax law. Without a clear indication from the legislature to the contrary, we may therefore look to federal decisional law to guide our interpretation of § 12-345c (a). Compare *Estate of Morse,* 9 Cal. App. 3d 411, 415, 88 Cal. Rptr. 52 (1970).

While the commissioner acknowledges that § 12-345c is modeled after a federal statute and that the dates required for the application of § 12-345c have been met, he contends that this court is required to follow a different course from that which would be followed under federal law in determining whether the decedent's interest in the trust is subject to tax. We disagree with the position of the commissioner that the decedent became a transferor for succession tax purposes in 1942 when she released her general power of appointment while retaining her life income interest in the trust.

The commissioner concedes that had the decedent been granted only a general power of appointment, which she had later partially released, the exemption available under § 12-345c would have applied. The commissioner argues, however, that because the grant of a general power of appointment to the decedent had been accompanied by the grant of a life income interest in the trust and because the decedent had retained

that life income interest at the time she partially released her general power, her partial release became a transfer "by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor," as provided in § 12-341b (d). The commissioner contends that at the time of the partial release, the decedent became a transferor by limiting the class of beneficiaries who would possess and enjoy that interest subject to the reduced power of appointment at the time of the decedent's death.

In support of this argument, the commissioner relies on *Miller* v. *Connelly,* 142 Conn. 144, 112 A.2d 202 (1955), and *Heffernan* v. *Freedman,* 177 Conn. 476, 418 A.2d 895 (1979). These cases, however, are factually distinguishable from the case now before us, for, although both of those cases applied § 12-341b (d) to determine the taxability of transfers in trust, neither case involved the partial release of a general power of appointment.

We conclude that these cases do not assist us in a proper construction of § 12-345c. We agree with the defendants' argument that the commissioner is incorrect that the retention of the decedent's life income interest was tied to the terms of the release. The partial release executed by the decedent in 1942 neither spoke of her life interest in the trust income nor was it required to do so. The decedent's right to the trust income, a right independent of her general power of appointment, was created and given to her by her grandfather. Given the language of the Dards will in this case, the partial release of her general power cannot be construed as a transfer, and without a transfer there is no tax.

Furthermore, the commissioner's argument ignores the clear language of § 12-345c. That section provides that a decedent shall be deemed to have made a tax-

able transfer of any property with respect to which a *general* power of appointment is exercised by the decedent. The statute further provides that "[i]f a general power of appointment . . . has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment . . . ." The statute does not link the possession of a life estate to a partial release of a general power of appointment so as to make such a partial release a taxable transfer. To construe the statute to imply such a linkage would, in a practical sense, almost totally eviscerate the statutory tax exemption provided for the exercise of partially released powers of appointment whenever the donee of a power retained a life estate. Absent a clear directive from the legislature to the contrary, we conclude that § 12-345c is to be read and interpreted as is its federal counterpart.

The decedent was granted a general power of appointment, which was created prior to October 21, 1942. Prior to November 1, 1951, the decedent partially released that power of appointment so that it was no longer a general power of appointment, and at the time of her death the decedent partially exercised her reduced power to dispose of the trust estate by appointing a total of $10,000 to two individuals. Given those facts, we conclude that the trial court correctly concluded that no succession tax was due on the value of the decedent's interest in the trust.

The judgment is affirmed.

In this opinion the other justices concurred.