CARPENTERI-WADDINGTON, INC. *v.* COMMISSIONER OF REVENUE SERVICES
(15007)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

---

Argued September 29—decision released November 22, 1994

*Thomas J. Londregan,* with whom, on the brief, was *Marguerite C. Driscoll,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

KATZ, J. The issue in this appeal is whether a restaurant that provides dancing privileges and that employs a disc jockey to play prerecorded music and entertain its patrons is a cabaret, as defined by General Statutes § 12-540,[1] and is therefore liable for the

---

[1] General Statutes 12-540 provides: "DEFINITIONS. Whenever used in this chapter:

"(1) 'Person' means and includes any individual, firm, copartnership, joint venture, association of persons however formed, social club, fraternal organization, corporation, estate, trust, fiduciary, receiver, trustee, syndicate, the United States, this state or any political subdivision thereof or any group or combination acting as a unit, and any other individual or officer acting under the authority of any court in this state;

"(2) 'Taxpayer' means any person as defined in subsection (1) of this section who is subject to any tax imposed by this chapter;

"(3) 'Admission charge' means the amount paid for the right or privilege to have access to a place or location where amusement, entertainment or recreation is provided, exclusive of any charges for instruction. Places of amusement, entertainment or recreation include, but are not limited to, theaters, motion picture shows, auditoriums where lectures and concerts are given, amusement parks, fairgrounds, race tracks, dance halls, ball parks, golf courses, miniature golf courses, tennis courts, skating rinks,

cabaret tax imposed by General Statutes § 12-542.[2] Because we conclude that an establishment that offers

swimming pools, bathing beaches, gymnasiums, auto shows, boat shows, camping shows, home shows, dog shows and antique shows;

"(4) 'Cabaret or other similar place' means any room in any hotel, restaurant, hall or other public place where music, dancing privileges or any other entertainment, except mechanical music alone or the music of a single performer alone, are afforded the patrons in connection with the serving or selling of alcoholic beverages even though the charge made for admission, refreshment, service or merchandise is not increased by reason of the furnishing of such entertainment;

"(5) 'Dues' shall include assessment charges to members irrespective of the purpose for which made and any charges for social, athletic or sporting privileges or facilities for any period of more than six days but not including charges made for instruction or charges for special assessments made (A) for the construction or reconstruction of any social, athletic or sporting facility or (B) for the construction or reconstruction of any capital addition to any such facility or (C) furnishings or fixtures, including installation charges, for any such facility, to the extent that such furnishings or fixtures are required, by reason of the construction or reconstruction described in subdivision (A) or (B) of this subsection, for the use of such facility upon completion of such construction or reconstruction; except that, in the case of any such amount which is not expended for such construction, reconstruction, furnishings or fixtures, including installation charges, within three years after the date of payment of such amount, the exemption provided by this subsection shall cease to apply upon the expiration of such three-year period, and the club shall be liable for any tax imposed by section 12-543 in respect of such payment, as if such payment had been made on the first day following the expiration of such three-year period;

"(6) 'Initiation fees' shall include any payment, contribution or loan required as a condition precedent to membership whether or not any such payment, contribution or loan is evidenced by a certificate of interest or indebtedness or share of stock;

"(7) 'Operating under a lodge system' means carrying on activities under a form of organization that comprises local branches, chartered by a parent organization and largely self-governing, called 'lodges,' 'chapters' or any similar title;

"(8) 'Club' means any organization which is either owned or operated by its members, or both."

[2] General Statutes 12-542 provides: "CABARET TAX. NATURE OF TAX. A tax is hereby imposed equivalent to five per cent of all amounts charged for admissions, refreshment, i.e., food and drink, service or merchandise at any cabaret or similar place furnishing music, dancing privileges or any other entertainment for profit during the time or times that such music, dancing privileges or any other entertainment is furnished. In such cases

dancing privileges is a cabaret under General Statutes § 12-540 (4), we affirm the judgment of the trial court.

The record establishes the following undisputed facts. The plaintiff owned a bar and restaurant named the Graffiti Lounge that served alcoholic beverages and provided dancing privileges. The establishment employed a performer and disc jockey, Edwin Brown, known as the "Duke of Doo-Wop" (Duke), who gave dancing lessons to the patrons and danced with them on the dance floor to the prerecorded music. Using prerecorded music and various props and costumes, he also mimicked musical performances and entertained the audience by lipsynching. When he was not engaged in these various forms of entertainment, the Duke played the prerecorded music while the patrons danced.

The defendant, the commissioner of revenue services, conducted a sales and use tax audit of the Graffiti Lounge for the period from January 1, 1984, through August 31, 1989, pursuant to General Statutes § 12-548.[3]

cabaret status begins at the earlier of (1) the time the music and dancing or other entertainment starts; or (2) the time any admission, cover, minimum, entertainment or similar charge is imposed. If any portion of an establishment is subject to the cabaret tax, the tax also applies to any other portion from which the entertainment can be viewed, or from which there is free access to the entertainment or dancing area. The tax imposed by this section is imposed upon the person making the charge for admission, refreshment, service or merchandise. Reimbursement for this tax shall be collected by such person from the purchaser. Such reimbursement termed 'tax' shall be paid by the purchaser to the person charging such amounts. Such tax when added to the amounts charged shall be a debt from the purchaser to the person making the charges and shall be recoverable at law."

[3] General Statutes 12-548 provides: "EXAMINATION OF RECORDS. DEFICIENCY ASSESSMENT. PENALTY. LIMITATION OF ASSESSMENT PERIOD. (a) The commissioner may examine the records of any person subject to a tax imposed under the provisions of this chapter as he may deem necessary. If he shall determine therefrom that there is a deficiency with respect to the payment of any such tax due under the provisions of this chapter, he shall assess or reassess the deficiency in tax, give notice of such deficiency assessment or reassessment to the taxpayer and make demand upon him for payment. Such amount shall bear interest at the rate of one and

As a result of the audit, the defendant imposed a deficiency assessment on the plaintiff for unpaid cabaret taxes.[4] Following the defendant's denial of reassess-

one-fourth per cent per month or fraction thereof from the date when the original tax was due and payable. When it appears that any part of the deficiency for which a deficiency assessment is made is due to negligence or intentional disregard of the provisions of this chapter or regulations promulgated thereunder, there shall be imposed a penalty equal to ten per cent of the amount of such deficiency assessment, or fifty dollars, whichever is greater. When it appears that any part of the deficiency for which a deficiency assessment is made is due to fraud or intent to evade the provisions of this chapter or regulations promulgated thereunder, there shall be imposed a penalty equal to twenty-five per cent of the amount of such deficiency assessment. No taxpayer shall be subject to more than one penalty under this subsection in relation to the same tax period. Any decision rendered by any federal court holding that a taxpayer has filed a fraudulent return with the Director of Internal Revenue shall subject the taxpayer to the penalty imposed by this section without the necessity of further proof thereof, except when it can be shown that the return to the state so differed from the return to the federal government as to afford a reasonable presumption that the attempt to defraud did not extend to the return filed with the state. Within thirty days of the mailing of such notice, the taxpayer shall pay to the commissioner, in cash, or by check, draft or money order drawn to the order of the commissioner of revenue services, any additional amount of tax, penalty and interest shown to be due.

"(b) Except in the case of a wilfully false or fraudulent return with intent to evade the tax, no assessment of additional tax shall be made after the expiration of more than three years from the date of the filing of a return or from the original due date of a return, whichever is later. If no return has been filed as provided under the provisions of this chapter, the commissioner may make such return at any time thereafter, according to the best information obtainable and according to the form prescribed. To the tax imposed upon the basis of such return, there shall be added an amount equal to ten per cent of such tax, or fifty dollars, whichever is greater. Such sum shall bear interest at the rate of one and one-fourth per cent per month or fraction thereof from the due date of such tax to the date of payment. No person shall be subject to a penalty under both this subsection and section 12-547. Where, before the expiration of the period prescribed herein for the assessment of an additional tax, a taxpayer has consented in writing that such period may be extended, the amount of such additional tax due may be determined at any time within such extended period. The period so extended may be further extended by subsequent consents in writing before the expiration of the extended period."

[4] The plaintiff did not furnish records delimiting the periods of cabaret status because it did not believe it was operating a cabaret. The defendant

ment and the imposition of liability, the plaintiff appealed to the Superior Court, pursuant to General Statutes § 12-554,[5] claiming that the restaurant was not a "cabaret" under § 12-540 (4) and, therefore, was not subject to the cabaret tax.

At trial, the plaintiff characterized the Duke's performance as "the music of a single performer alone." Consequently, the plaintiff argued, the Graffiti Lounge fell within the statutory exclusion to the definition of a "cabaret or other similar place" under § 12-540 (4), and was, therefore, not subject to the cabaret tax under § 12-542. The trial court concluded, however, that the statute provided an exemption, not an exclusion, and that the plaintiff had not sustained its burden of proving that it was entitled to the exemption.[6] Accordingly,

therefore used the total gross receipts as reported by the plaintiff for the sales and use tax as the basis for the assessment. Although the plaintiff protested the assessment because it claimed it was exempt, it did not challenge the methodology used or the defendant's specific computation.

[5] General Statutes § 12-554 provides in relevant part: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this chapter may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court."

[6] In its initial complaint, the plaintiff claimed that the Graffiti Lounge was exempt from § 12-542. In its posttrial brief, however, the plaintiff argued that it fell outside the scope of the taxing statute and asked the court to construe § 12-542 strictly against the state. Whether a particular statute is a tax imposition statute or a tax exemption statute often determines whether a taxpayer is entitled to a construction in his or her favor or whether the statute must be construed in favor of the state. *Altray Co.* v. *Groppo*, 224 Conn. 426, 432, 619 A.2d 443 (1993). The principles of statutory construction that govern the applicability of a tax exemption are well established. "First, statutes that provide exemption from taxation are a matter of legislative grace that must be strictly construed against that taxpayer. Second, any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption." *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Rev-*

the court upheld the defendant's deficiency assessment. The plaintiff appealed from that decision to the Appellate Court, and this court transferred the appeal to itself pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

In this case, we must examine two statutes: §§ 12-540 (4) and 12-542. Section 12-542 imposes a tax on amounts charged for admissions, refreshment, service or merchandise at any cabaret or similar place that furnishes music, dancing privileges or any entertainment for profit during the time that such music, dancing privileges or any other entertainment is provided. It is undisputed that the plaintiff received money while the Duke performed, and that the Graffiti Lounge was in business for profit. Consequently, the plaintiff's operation was taxable under § 12-542 if it was "a cabaret or similar place" as defined by § 12-540 (4).

The parties agree that the establishment afforded its patrons "music, dancing privileges or other entertainment." They disagree, however, about how to interpret the phrase "except mechanical music alone or the music of a single performer alone" within the context of § 12-540 (4). The plaintiff argues that the exceptions modify the entire preceding phrase. Therefore, the plaintiff contends, if patrons dance to mechanical music or to a single performer, the establishment is not subject to the tax. Because these are exceptions to the tax-

*enue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990). Otherwise, a taxing statute is construed against the state and in favor of the taxpayer. *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 54, 607 A.2d 424 (1992).

Our decision in this case, however, does not turn on the distinction between a statutory exception or exemption. We conclude that because it provided dancing privileges, the Graffiti Lounge is a cabaret. Therefore, even if § 12-542 imposes a tax on cabarets, as defined by § 12-540 (4), and the state thus had the burden of proving that the Graffiti Lounge was a cabaret, the state met its burden by virtue of the undisputed fact that dancing privileges were provided.

able class, the plaintiff maintains the establishment is removed from the class before tax liability is ever imposed. We disagree.

We begin our analysis by noting that it is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. *Lauer* v. *Zoning Commission*, 220 Conn. 455, 459–60, 600 A.2d 310 (1991). In seeking to ascertain the legislature's intent when it crafted chapter 225 of the General Statutes, the admissions, cabaret and dues tax statutes, we follow well established principles of statutory construction and "look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Id., 460. No one invariable rule of statutory construction is controlling.

Section 12-542 provides authority to tax all establishments where music, dancing privileges or any other entertainment is furnished for profit, and § 12-540 (4) limits the application of the tax by providing an exclusion for "mechanical music alone or the music of a single performer alone." "A court should accord a statutory enactment its plain meaning." *State* v. *Jimenez*, 228 Conn. 335, 341, 636 A.2d 782 (1994); *Kilpatrick* v. *Board of Education*, 206 Conn. 25, 28, 535 A.2d 1311 (1988). Therefore, to accord § 12-540 (4) its plain meaning, we first focus on the word "alone." Webster's defines alone as "exclusive of anyone or anything else: only." Webster's Ninth New Collegiate Dictionary. We see no reason to torture the meaning of "alone." The exclusion at issue pertains to situations where *only* mechanical music or *only* the music of a single performer is provided, without anything else. Therefore, if the music is mechanical or that of a single

performer, the tax may still be imposed if the establishment in question affords dancing privileges or other entertainment. Moreover, had the legislature intended to exclude establishments that afford their patrons the opportunity to dance to mechanical music or the music of a single performer, it could easily have done so. The provision of dancing privileges remains an indisputable fact of taxable significance that cannot be ignored.[7]

The history of § 12-540 (4) confirms that the legislature sought to exclude only those establishments where background music is incidental to dining. Following the 1969 enactment of the admission, cabaret and dues tax, the legislature created an exception to § 12-540 (4) that applied only to "mechanical music alone." Public Acts 1971, No. 837, § 1. Even as amended, § 12-542 provoked a public protest, and associations representing restaurants and musicians petitioned the legislature to change the law because the tax created a significant rise in unemployment among entertainers who performed alone. Conn. Joint Standing Committee Hearings, Finance, 1971–1972 Sess., pp. 16–18, 43–44, 50–52. In response, the legislature added another exception to § 12-540 (4) in 1972: "the music of a single instrumental performer alone." Public Acts 1972, No. 88, § 1. This was proposed specifically to address the problem that "over 140 or [1]50 musicians . . . had lost their jobs as a result of a Cabaret Tax being applied to places where they were furnishing background music." 15 H.R. Proc., Pt. 4, 1972 Sess., p. 1448, remarks of Representative Darius J. Spain. The exception was intended to encourage restaurants to hire musicians who provide background music and was narrowly defined so that the state would suffer a minimal loss of revenue. Id. Following the 1972 amend-

---

[7] Because we decide this case on the basis of dancing privileges, we need not determine whether the Duke was a "single performer alone" within the meaning of § 12-540 (4).

ment, however, the department of revenue services ruled that the performance of a vocalist created a cabaret status. Conn. Joint Standing Committee Hearings, Finance, Pt. 3, 1977 Sess., p. 875. Thereafter, the statute was again amended to exclude "music of a single performer alone" in order to permit an establishment employing a musician who sings to his or her own musical accompaniment to avoid the tax. Public Acts 1977, No. 77-434, § 1; Conn. Joint Standing Committee Hearings, Finance, Pt. 3, 1977 Sess., pp. 855–56, 874. This statutory history reflects the legislature's intent to provide a limited exception to establishments that hire single musicians to entertain their diners. Nowhere is there any indication, however, that the legislature intended to exclude from the definition of "cabaret" places affording dancing privileges to its patrons.

Our interpretation of § 12-540 (4) is consistent with the federal government's application of its tax on cabarets. This is significant because the elimination of the federal cabaret tax prompted the enactment of our cabaret tax in order to capture some of the revenue freed up by that elimination.

From 1917 until 1965, the Internal Revenue Service imposed a federal admissions tax on performances and entertainment that exempted establishments providing "mechanical music alone." 26 U.S.C. § 4231 (6) (repealed 1965). When, as in this instance, the language used in the federal tax statutes is nearly identical to that before us, we may look to federal law to guide our interpretation of the state statute. *Commissioner of Revenue Services* v. *Peska,* 220 Conn. 77, 83, 595 A.2d 348 (1991). We find the evolution of the federal law to be instructive.

The federal admissions tax, enacted during World War I as part of the War Revenue Act, c. 63, 40 Stat.

300, 318 (1917), imposed a tax on amounts paid "for admission to any public performance for profit at any cabaret or other similar entertainment to which the charge for admission is wholly or in part included in the price paid for refreshment, service or merchandise." The statute, however, contained no definition of either "cabaret" or other "similar entertainment." Soon after the implementation of that act, therefore, the Department of the Treasury issued an administrative definition of the statutory terms, determining that " '[c]abaret or other similar entertainment' includes every hotel, restaurant, hall, or other public place at or in which, in connection with the service or sale of food or other refreshment or merchandise, there is conducted any vaudeville or other performance or diversion in the way of acting, singing, declamation or dancing, either with or without instrumental or other music. Every form of entertainment so conducted is included, except that furnished by orchestras performing instrumental music only, unaccompanied by any other form of entertainment. A hotel, restaurant, or hall affording, in connection with the service of refreshment, food or merchandise, entertainment in the form of dancing by its patrons is included." T.D. 2603, 19 Treas. Dec. Int. Rev. 370, 371 (1917). A distinction was made between "dancing, either with or without instrumental or other music," which subjected an establishment to tax, and "instrumental music only unaccompanied by any other form of entertainment," which created no tax liability. This definition, with minor changes, was soon thereafter incorporated in a formal regulation. Treas. Reg. 43, set forth in T.D. 2681, 20 Treas. Dec. Int. Rev. 93, 98 (1918).

Although the regulations were modified and expanded over the next twenty-three years, the Department of the Treasury consistently took the position that the admissions tax applied to a wide variety of estab-

lishments offering dancing privileges. See *Geer* v. *Birmingham*, 88 F. Sup. 189, 198–210 (N.D. Iowa), rev'd, 185 F.2d 82 (8th Cir. 1950), cert. denied, 340 U.S. 951, 71 S. Ct. 571, 95 L. Ed. 686 (1951). In 1942, Congress amended the admissions tax statute to provide, for the first time, a statutory definition of the term "cabaret or similar place." Revenue Act of 1942, c. 619, 56 Stat. 798, 981 (1942). This amendment provided that "[a]ll amounts paid for admission, refreshment, service or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit . . ." were subject to a tax. "[R]oof garden, cabaret, or other similar place" was defined to include "any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise." Id. According to the Senate and House of Representatives reports accompanying the Revenue Act of 1942, the amendment confirmed the interpretation of the statute by the Department of the Treasury. H.R. Rep. No. 2586, 77th Cong., 2d Sess. 79 (1942); S. Rep. No. 1631, 77th Cong., 2d Sess. 268 (1942). Following the enactment of this clear statutory exception for "instrumental or mechanical music alone," the Department of the Treasury amended its regulations to provide that "[w]here music, whether by an orchestra, a mechanical device, or otherwise, and a space in which the patrons may dance is furnished in the dining room of a hotel, or in a restaurant, bar, etc., the entertainment constitutes a public performance for profit at a roof garden, cabaret or similar place, and the payments made for admission, refreshment, service, and merchandise are subject to the tax." T.D. 5192, 1942-2 C.B. 49.

As a result, the federal courts have decided numerous cases involving establishments that allow their

patrons to dance to instrumental or mechanical music and have consistently held that the provision of "dancing privileges" was sufficient to incur tax liability. See *Billen* v. *United States*, 273 F.2d 667 (10th Cir. 1960); *Godwin* v. *Brown*, 249 F.2d 356 (8th Cir. 1957); *Crapps* v. *Duehay*, 208 F. Sup. 344 (E.D.S.C. 1962); *Jones* v. *Fox*, 162 F. Sup. 449 (D. Md. 1957); *In re Duffin*, 141 F. Sup. 869 (S.D. Cal. 1956). As the court stated in *United States* v. *Ritchie*, 327 F.2d 732, 736 (5th Cir. 1964), "the [Revenue Act of 1942] expressly excludes places where mechanical music alone is furnished, but when a place for dancing is added, mechanical music alone is no longer furnished and this exclusion is no longer effective to bring an establishment out of the coverage of the statute." We concur with this reasoning and we adopt it.

Because the Graffiti Lounge provided dancing privileges, the exception set forth in § 12-540 (4) does not preclude taxation and we conclude that the trial court correctly found that the defendant properly imposed the cabaret tax.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.