[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These administrative appeals have been consolidated.[1] They arise from a decision of the state Elections Enforcement Commission ("Commission") issued on March 12, 1997, which found that the Board of Education of Regional School District No. 17 ("Board"), its members, and its Superintendent of Schools Charles F. Sweetman, Jr. ("Sweetman"), violated General Statutes § 9-369b
by expending municipal funds to influence a vote on a CT Page 1520 referendum. The decision directs prospectively strict compliance with § 9-369b, reprimands three members of the Board,[2]
requires Sweetman and seven other members of the Board[3] to reimburse the Board for the improper expenditures in the amount of $2,573.68, and imposes an additional $1,000 civil penalty on Sweetman.
The Commission on June 14, 1996, received a complaint dated June 8, 1996, which alleged a violation of § 9-369b by the Board in connection with the mailing of a brochure to residents of School District No. 17 in April of 1996 regarding a May 1996 referendum on the Board budget. The Commission heard the complaint as a contested case on November 13, 1996. At such hearing the parties appeared with counsel, stipulated to certain facts and exhibits, presented testimony and further exhibits, and were heard in argument.
The Commission, based on substantial evidence in the record, made the following findings:
 2. It is found that Regional School District No. 17 is solely comprised of the towns of Haddam and Killingworth.
 3. It is found that at all times relevant to this complaint the district board was comprised of the following ten members: Helen Reeve, Jeannetta U. Coley, Robert H. Lentz, Robert J. Bilafer, Edward A. Vynalek, Anne E. Wolak, Rebecca L. Bergeron, Michael F. Dagostino, Robert S. Daves and James E. Sheppard. It is further found that the town of Haddam has six members and the town of Killingworth has four members on such district board in accordance with each town's percentage of population in the total district.
 15. It is found that a referendum on the regional school district budget was held simultaneously in the towns of Haddam and Killingworth on May 7, 1996, and that such referendum was defeated. A revised budget referendum passed on June 1, 1996.
 16. It is found that at its April 9, 1996 meeting, the respondent board voted to adopt the CT Page 1521 legal call for the district annual meeting on May 6, 1996, and to set the voting hours for a referendum on the budget for May 7, 1996.
 17. It is found that the budget subcommittee of the respondent board met on February 29, 1996, with respondents Reeve, Lentz, Coley, Sheppard, Wolak and Sweetman present, and discussed the complained of budget flyer (hereinafter "the budget mailer"). It is further found that all members of the board are members of the budget subcommittee.
 18. It is found that the budget subcommittee of the board met again on April 4, 1996, with respondents Reeve, Lentz, Coley, Bergeron, Daves, and Vynalek present, and discussed the budget mailer.
 19. It is found that the budget subcommittee of the board met on April 16, 1996, with respondents Reeve, Lentz, Bilafer and Sweetman present, discussed, finalized and approved the budget mailer for distribution to households in the district.
 20. It is found that the format of the budget mailer is based upon that of previous flyers, including an introductory letter authored by respondent Lentz as budget chairman. The introductory letter went through several drafts, and in response to respondent Reeve's suggestion that it was too strong, a specific exhortation to vote for the budget was removed from the first draft.
 22. It is found that neither the respondent board nor the respondent superintendent had the budget mailer reviewed by an attorney prior to its mailing.
 23. It is found that prior to the referendum vote on May 7, 1996, the approximately 4,800 households within the district received the twelve page budget mailer, which included charts, graphs, a question and answer section, and statements such CT Page 1522 as: "We need to set aside monies for such basic capital improvements as roof and oil tank replacement and black top resurfacing . . . It is imperative to maintain our facilities . . . Please think for a minute of your own budget over the last few years. Have you or your friends had an increase in income to keep pace with inflation? If not, how did you or they cope? What did you cut or adjust? . . . we on the Board are faced with the same realities . . . We look forward to a high turnout at the polls. We need voter participation to validate our educational priorities and directions."
 24. It is found that the return address of the budget mailer reads, in pertinent part: "REGIONAL SCHOOL DISTRICT NO. 17, Office of the Superintendent . . ."
 25. It is found that the budget mailer cost $1,950 to print and $623.68 to mail, and such printing and distribution was at the expense of the school district.
The Board and its ten members appealed the Commission's decision on April 11, 1997, and Sweetman appealed on April 24, 1997. The cases were consolidated on May 15, 1997. The answer and record were filed on May 24, 1997. Briefs were filed by the Board on July 7, 1997. Sweetman on July 3, 1997, and the Commission on August 18, 1997. The plaintiffs adopted all arguments presented in their various briefs. The parties were heard at oral argument on January 7, 1998.
The plaintiffs argue: 1) that § 9-369b is inapplicable to regional boards of education; 2) that the expenditures related to the budget brochure were not from state or municipal funds, but from regional school district funds; 3) that § 9-369b is unconstitutional; 4) that the Commission's "Style, Timing and Tenor" standards constitute an unenforceable regulation; 5) the factual findings are erroneous; and 6) the penalties are abusive. The court finds for the plaintiff Dagostino because the record contains no substantial evidence of his responsibility for the budget mailer. The court finds the remaining issues for the Commission. CT Page 1523
The issues relating to the scope of coverage and constitutionality of § 9-369b are of first impression.
Section 9-369 is found in Chapter 152 titled "Referenda." Section 9-369b is entitled: "Explanatory text relating to local questions. Expenditure of state funds to influence vote prohibited. Exception. Civil Penalty. Summary of arguments for, against local questions."
The plaintiffs focus on the statute's reference to "municipality" and omission of any reference to boards of education or more specifically regional boards of education. The Commission relies on a sentence within the text of §9-369b (a) "no expenditure of state or municipal funds shall be made to influence any person to vote for approval or disapproval of any such proposal or question." Section 9-369b(b) empowers the Commission to "impose a civil penalty on any person who violates subsection(a) of this section by authorizing an expenditure of state or municipal funds for a purpose which is prohibited by subsection (a)."
"[T]he process of statutory construction involves a reasoned search for the intention of the legislature." Frillica v.Westport, 231 Conn. 418, 431 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. Id.; Carpentieri-Waddington, Inc. v. Commissioner of RevenueServices, 231 Conn. 355, 362 (1994); United Illuminating Co. v.Groppo, 220 Conn. 749, 755-56 (1992)." (Internal quotation marks omitted.) United Illuminating Co. v. New Haven, 240 Conn. 422,432-33 (1997).
The legislative history and circumstances surrounding its enactment are unusually instructive. Section 9-369 (b) was revised by Public Act No. 89-159 to expand the prohibition of the expenditure of public funds to advocate a position on a referendum issue to encompass municipal as well as state funds. In addition, civil penalties were added for violations. The house debate expresses the intention to broadly cover all referenda CT Page 1524 binding or advisory, involving boards of education or "quasi-public" agencies. 32 H.R. Proc. Pt. 15, 1989 Sess., pp. 4939-4959. Specific reference is made to board of education budget referenda.
The legislative history, the context of Chapter 152 and the language of the statute illuminate the policy advanced by the statute. If an issue is before the public in a referendum, then neither side may use public funds to advocate on the issue. The use by public officials of public funds as in this case, is precisely the evil addressed by the legislature in enacting Public Act 89-159. In that public officials and public employees are more likely to direct the expenditure of public funds they are most likely to be restricted by this act. There is no plausible reading of the policy or statute which would allow the exclusion of individuals because of their status as elected officials or public employees. They are the intended targets of the limits on publicly funded advocacy on local referenda. Section 9-369b applies to regional boards of education.[4]
The plaintiffs dispute the characterization of the regional district's funds as "municipal funds." The Commission's conclusion is supported by the educational laws of the state. General Statutes § 10-51 (b) provides, "each town in the district shall pay a share of the cost of capital outlay and current expenditures necessary for the operation of the district." Though the regional district enjoys some fiscal autonomy, it is dependent on the constituent municipalities for its funds. The restricted view of the statute advocated by plaintiffs would frustrate it's obvious purpose and remedial nature.
In a further attempt to preclude the application of the statute to regional boards of education the plaintiffs suggest that the vote on the district budget was not the "local proposal or question approved for submission to electors of a municipality at a referendum." What occurred in the district budget vote were simultaneous municipal referenda. The referenda were submitted to the constituent municipalities and involved the "local proposal" of the pro rata contribution of the municipality to the budget.
The plaintiffs next assert that § 9-369b is unconstitutionally vague both facially and as applied.
In order to prevail on its claim of facial vagueness the plaintiffs "must demonstrate that the statute has no core CT Page 1525 meaning. Put another way, a determination that the statute is not vague with respect to at least one application will defeat the challenge. The burden is augmented by the strong presumption in favor of the statute's constitutionality." Benjamin v. Bailey,234 Conn. 455, 483 (1995).
The core meaning of § 9-369b is readily apparent. Public funds may not be used to influence how a voter will vote on local referenda. The terms advocate and/or influence are fleshed out by the statute's allowance of budgetary explanatory text (§9-369b(a)) or under § 9-369b(c) by ordinance "concise summaries of arguments in favor of, and arguments opposed to: . . ." All other efforts to influence or advocate a voters decision must be privately financed.
The permissible regulations of campaign financing have been addressed in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612,46 L.Ed.2d 659 (1976). Buckley recognized significantly greater constitutional protection for prohibited expenditures, but noted that not all expenditures are entitled to heightened constitutional protection. Id., 47 n. 53. Certain expenditures further the political speech only indirectly. Also, see State v.Proto, 203 Conn. 682, 701 (1987).
In the instant case the prohibition on any expenditure of public funds by any person to advocate a position on a local referenda is unusually vivid. The governmental interest in the insulation of the democratic process of local referenda from the partisan use of public funds is fundamental and compelling. The state also has a compelling interest in the use of public funds by its political subdivisions.
The plaintiffs' vagueness claim may also raise the related issue of overbreadth. Smith v. Goguen, 415 U.S. 566, 477 n. 20;94 S.Ct. 1242, 39 L.Ed.2d 605 (1979); "The First Amendment Overbreadth Doctrine," 83 Harv. L. Rev. 844, 845 n. 5 (1970).
"The essence of the overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment." State v. Proto, supra,203 Conn. 707.
A party has standing to raise an overbreadth claim only if there is a realistic danger that the statute will significantly CT Page 1526 compromise recognized First Amendment protections of parties not before the court. Broadrick v. Oklahoma, 413 U.S. 601, 613-15,93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
The plaintiffs are unable to articulate any recognized First Amendment protection of public officials to use of public funds to advocate their view on public issues in local referenda.
In determining whether a communication constitutes advocacy under § 9-369b the Commission considers the "style, tenor and timing" of the entire document.[5] This standard was adopted fromStanson v. Mott, 551 P.2d 1, 12 (Cal. 1976); Burt v.Blumenauer, 699 P.2d 168, 172-73 (Ore. 1985). The Commission communicated this standard in a letter to all of the state's superintendent's of schools R. #67). The standard is further referenced in a publication, T. Mooney, A Practical Guide to Connecticut School Law, (1994) p. 53.
The plaintiffs contend that the "style, tenor and timing" standard is a regulation which has been enacted in violation of the Uniform Administrative Procedures Act (UAPA) § 4-168.[6]
In applying the terms "advocate" and "influence" to the facts, "The Commission was doing its duty. It was interpreting the statute, which was enacted for its guidance and which it was charged with administering. . . ." Eagle Hill Corp. v. Commissionon Hospitals, 2 Conn. App. 68, 77 (1984). "[A]dministrative agencies must necessarily interpret statutes which are made for their guidance. To rule otherwise would be to ignore the subtle interaction of law and fact. It is inherent in our judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator or judge." Connecticut Life Health Ins. GuarantyAssn. v. Jackson, 173 Conn. 352, 356-57 (1977).
The court finds that the "style, tenor and timing" standard is not a regulation of the Commission. It does not add any additional prohibition to what was prohibited by statute.
The plaintiffs' challenges to the evidentiary basis of the Commission's ruling is measured by the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial CT Page 1527 evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. (Citations and internal quotation marks omitted; footnote omitted.) Dolgnerv. Alander, supra, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The court's review of the record reveals insufficient evidence to support the Commission's order with respect to the plaintiff Dagostino. Mr. Dagostino was not present at any of the meetings at which the budget brochure was discussed or approved.[7] The mere fact that Dagostino was a board member at the time of the consent agreement is insufficient to support the order of reimbursement as to him.
The findings and orders as to all other plaintiffs are supported by substantial evidence in the record.
Sweetman argues that the commission improperly found that he authorized the budget mailer. In paragraph 31 of its decision, the commission specifically finds that Sweetman violated §9-369b "by authorizing the expenditure of municipal funds to prepare, reproduce and distribute the budget mailer." The Commission additionally found that Sweetman was "responsible for sending the budget mailer to households within the school district." The record supports this finding. CT Page 1528
Not only was Sweetman present at two of the budget mailer meetings, he also sent the final version of the budget mailer to Chairperson Helen Reeve with a letter that on the one hand disavowed his responsibility for the mailer. In the same letter, however, Sweetman stated that absent further instructions, the final version of the budget mailer would be forwarded to the printer. The return address on the budget mailer read "REGIONAL SCHOOL DISTRICT NO. 17, OFFICE OF THE SUPERINTENDENT." Significantly, Sweetman testified that he would not have "allowed [a first draft of the introductory message] to go out. . . . I would not have allowed what I would have considered advocacy to have been in there." (Transcript p. 106) As the Commission points out, this evidence indicates that Sweetman had authority over whether the budget mailer was published.
The challenge to the penalties is unavailing. Section9-369b(b) authorizes the Commission to impose a civil penalty for any violation of § 9-369b(a) up to twice the amount of the improper expenditure. Thus, the orders were within the Commission's authority. The Commission's decision considers the factors to be considered by regulation in assessing civil penalties.[8]
The Commission found a serious offense, an improper expenditure of public funds; and a history of noncompliance evidencing an absence of good faith. (R. 47-49).
Furthermore, the amount of the fine was clearly a matter of discretion with the Commission. The standard of judicial review require that "an agency's factual and discretionary determinations are to be accorded considerable weight by the courts." Board of Administration v. Bridgeport CommunityTelevision Co., 168 Conn. 294, 298-99 (1975); ConnecticutHospital Ass'n v. Commission on Hospitals and Health Care,200 Conn. 133, 140 (1986); State Medical Society v. Board ofExaminers in Podiatry, 208 Conn. 709, 777 (1988).
The appeal of the plaintiff Dagostino is affirmed. All other appeals are dismissed. The case is remanded to the Commission pursuant to § 4-183 (k) to reassess the reimbursement costs amount among the other individuals identified in paragraph 4 of the Commission's order.
Robert F. McWeeny, J. CT Page 1529