REYES ALVAREZ *v.* NEW HAVEN REGISTER, INC.
(SC 16024)

Berdon, Norcott, Katz, Palmer and Peters, Js.

Argued March 18—officially released July 27, 1999

*Stephen R. Bellis*, for the appellant (plaintiff).

*Michael T. McCormack*, with whom, on the brief, was *Philip T. Newbury, Jr.*, for the appellee (defendant).

*Opinion*

KATZ, J. The sole issue in this appeal is whether, notwithstanding General Statutes § 52-572e,[1] a release

---

[1] General Statutes § 52-572e provides: "Release of joint tortfeasor. (a) For the purposes of this section the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property whether or not a judgment has been recovered against all or any of them.

"(b) A release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides."

executed in favor of an employee operates as a matter of law to release the employer whose sole liability is premised on the doctrine of respondeat superior. We conclude that the employer and employee are not joint tortfeasors pursuant to the statute and that, accordingly, the employer is released from any derivative liability.

The record includes the following undisputed facts. The plaintiff, Reyes Alvarez, brought an action against Grazyna Ziolo[2] for injuries sustained as a result of a motor vehicle accident that occurred while Ziolo was acting within the scope of her employment with the New Haven Register (Register), the defendant in the present action.[3] The accident occurred when the plaintiff's motor vehicle, while stopped at a traffic light, was struck from behind by a motor vehicle operated by Ziolo.

The plaintiff and Ziolo's insurance carrier, the Progressive Insurance Company (Progressive), agreed to submit the claim to high-low binding arbitration. The arbitrator found damages in excess of the $100,000 policy and the plaintiff agreed to accept $90,000, which award took into consideration collateral source offsets. Although the plaintiff's counsel submitted a satisfaction for payment of the award, Progressive rejected the satisfaction, insisting instead that the plaintiff sign a "full release of all claims and demands."[4]

---

[2] The plaintiff also asserted claims against Jan Ziolo, the owner of the vehicle, and the Ziolos' insurance carrier, Progressive Insurance Companies. Hereinafter, references to Ziolo are to Grazyna Ziolo only.

[3] The accident occurred while Ziolo was showing the plaintiff, an independent contractor responsible for stocking newspaper vending machines owned by the Register, the delivery route he was to follow.

[4] The release provides as follows:

"FULL RELEASE OF ALL CLAIMS AND DEMANDS

Date: April 11, 1997

Know All By These Presents, that I, Reyes Alvarez, a married individual for and in consideration of Ninety Thousand Dollars and 00/100 ($90,000.00), the receipt whereof is hereby acknowledged, does (do) hereby for my (our) heirs, executors, administrators, successors and assigns and any and all

After executing the release, the plaintiff commenced the present action against the Register, claiming that the Register is vicariously liable under the doctrine of respondeat superior for the alleged negligent acts of its employee, Ziolo.[5] The Register filed an amended answer and asserted special defenses alleging, inter alia, that the plaintiff's claim was barred because, in settling with

other persons, firms, employers, corporations, associations or partnerships release, acquit and forever discharge Grazyna Ziolo, Jan Ziolo and Progressive Insurance Companies of and from any and all claims, actions, causes of actions, demands, interest, costs, property damage, loss of wages, expenses, hospital medical and nursing expenses, accrued or unaccrued claims for loss of consortium, loss of support of affection, loss of society and companionship on account of or in any way growing out of any all known and unknown personal injuries and damages resulting from an automobile accident which occurred on or about August 2, 1995, at or near Boston Post Road, Milford, CT.

It is understood and agreed that this settlement is in full compromise of a doubtful and disputed claim as to both questions of liability and as to the nature and extent of the injuries and damages, and that neither this release, nor the payment pursuant thereto shall be construed as an admission of liability, such being denied.

It is further understood and agreed that the undersigned relies wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect, and duration of said injuries and liability therefore and is made without reliance upon any statement or representation of the party or parties hereby released or their representative.

I have read this release and understand it.

Signed: /s/ Reyes Alvarez

_____
_____

Witnesses

Affidavit no. 2115:
Before me this 11 day of April, 1997, came REYES ALVAREZ, known to me to be the individual who executed this release, and acknowledged that she fully understands the contents and freely executed same for the sole consideration therein expressed.

Attorney or Notary Public /s/ Elmer Martinez Rivera"

[5] The plaintiff does not raise any issue of collateral estoppel in this appeal. That is, he does not claim that the Register is precluded from litigating the issue of Ziolo's negligence or his damages as a result of the arbitration award and the ensuing release. See Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 818, 695 A.2d 1010 (1997).

Ziolo, the plaintiff had executed a general release of all potential tortfeasors. The plaintiff denied the allegations made in the special defenses, and the Register thereafter moved for summary judgment claiming that the release, which had been executed by the plaintiff in favor of Ziolo, discharged the Register from any vicarious liability.

In response to the motion, the plaintiff filed an objection and an affidavit stating that, at the time of settlement with Progressive, he had never intended to release the Register from liability by signing the release and that he had fully intended to pursue a claim against the Register. The trial court determined, as a matter of law, that the Register and Ziolo were not joint tortfeasors under the common law, and that, consequently, § 52-572e does not abrogate the common-law principles regarding vicarious liability of a master and servant. Accordingly, the court rendered summary judgment for the Register, concluding that the release executed in favor of Ziolo operated, as a matter of law, to release the Register.

On appeal,[6] the plaintiff claims that the trial court improperly concluded that, because § 52-572e did not apply to this case, the release of Ziolo, as a matter of law, discharged the liability of the Register as her employer. The plaintiff further claims that, pursuant to *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 406 n.7, 623 A.2d 995 (1993), whether the release was intended to release the Register from liability for its employee's alleged negligence is a question of fact to be determined by the fact finder. We conclude that § 52-572e does not embrace the independent actions against an employer and an employee and that, consequently, the trial court

[6] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

properly granted the Register's motion for summary judgment.[7]

We begin with a brief discussion of the pertinent legal principles. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384 [now § 17-49]. *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 481, 697 A.2d 680 (1997)." (Internal quotation marks omitted.) *Nichols* v. *Lighthouse Restaurant, Inc.*, 246 Conn. 156, 163, 716 A.2d 71 (1998). Because the sole question presented by this case involves the proper application of § 52-572e to an undisputed factual scenario, our review is plenary. *Charles* v. *Charles*, 243 Conn. 255, 258, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history

---

[7] The plaintiff argues that, in accordance with this court's interpretation of § 52-572e; see *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 409–10; the trial court improperly failed to consider extrinsic evidence of his intent regarding the scope of the release. In *Sims*, the parties agreed that the defendants were joint tortfeasors within the meaning of § 52-572e. Id., 408 n.9. Because, as we conclude herein, that Ziolo and the Register were not joint tortfeasors within the meaning of the statute, and in the absence of any other basis upon which to abrogate the common law, the trial court correctly relied on the common law to conclude that the release of Ziolo served to discharge the Register.

and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Id.; *Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services,* 231 Conn. 355, 362, 650 A.2d 147 (1994); *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 755–56, 601 A.2d 1005 (1992)." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven,* 240 Conn. 422, 431–32, 692 A.2d 742 (1997).

Finally, "[w]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. . . . We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated. The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law. 3 J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 61.01, pp. 172–73." (Citations omitted; internal quotation marks omitted.) *Lynn* v. *Haybuster Mfg., Inc.,* 226 Conn. 282, 289–90, 627 A.2d 1288 (1993).

Both parties recognize that, in the absence of a specific statute, where the liability of a principal for a tort

committed by his agent is predicated solely upon the doctrine of respondeat superior, a valid release of either operates to release the other. Therefore, the issue before us is whether the legislature, in enacting § 52-572e, intended to abrogate the common law in this regard. On the basis of the language of § 52-572e, its legislative history and the circumstances surrounding its enactment, the policy it was designed to implement, and its relationship to other legislation governing the same subject matter, we conclude that, pursuant to § 52-572e, the release of Ziolo did, as a matter of law, release the Register.

We first examine the language of § 52-572e to determine whether it clearly reflects the legislature's intent to include situations involving vicarious liability. "A release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides." General Statutes § 52-572e (b). "Joint tortfeasors" are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property whether or not a judgment has been recovered against all or any of them." General Statutes § 52-572e (a). The plaintiff contends that although Ziolo and the Register were not jointly liable, they were nevertheless severally liable, and thereby embraced by § 52-572e.

Although the plaintiff could have brought an action against *either* Ziolo *or* the Register *or* both; see *Chase* v. *New Haven Waste Material Corp.*, 111 Conn. 377, 380–81, 150 A. 107 (1930); that factor in and of itself does not resolve the matter. Joint liability is based upon the concept that all tortfeasors are independently at fault for their own wrongful acts. *Caviote* v. *Shea*, 116 Conn. 569, 575, 165 A. 788 (1933). Their liability is direct because they actually contributed to the injury. At common law, an individual injured by the negligence of one or more tortfeasors could proceed against any one of

the tortfeasors for payment of damages. This was permitted to ensure that the plaintiff would be made whole. The terms "joint and several liability" and "joint or several liability" essentially meant the same thing—that an injured party could look to either or both of the tortfeasors and that either one would be liable for the full amount of the plaintiff's damages. *Sparrow* v. *Bromage*, 83 Conn. 27, 28–29, 74 A. 1070 (1910).

We recently had the opportunity to explain this principle. "Prior to October 1, 1986, this state adhered to the rules of joint and several liability with no contribution among joint tortfeasors. This doctrine can be stated succinctly. If the illegal conduct of each of the defendants was a proximate cause of the collision, they would be liable jointly and severally, the plaintiff would have a right to recover the entire amount of damages awarded from either, and, if he did so, the defendant paying them would have no right of contribution against the other; or the plaintiff might have sued either alone, and of course in the event of a recovery, that one would have been compelled to pay the entire amount of damages. *Rose* v. *Heisler*, 118 Conn. 632, 633, 174 A. 66 (1934).

"In accordance with the common law of joint and several liability, therefore, even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages, as long as his negligence was a proximate cause of the plaintiff's injuries. Thus, the plaintiff could collect the entire amount of his judgment from the richest defendant, or from the defendant with the deepest pocket. G. Royster, 'Joint and Several Liability and Collateral Sources Under the 1987 Tort Reform Act,' 62 Conn. B.J. 257 (1988)." (Internal quotation marks omitted.) *Donner* v. *Kearse*, 234 Conn. 660, 666–67, 662 A.2d 1269 (1995).

Therefore, the inclusion of the term "severally liable" does not appreciably illuminate the parameters of § 52-572e. Nor is there other language in § 52-572e to indicate

an unequivocal intent on the part of the legislature to abrogate the common-law principles pertaining to an employer's liability under the doctrine of respondeat superior. Accordingly, we turn next to the legislative history of § 52-572e.

Rather than attempt to improve upon our lengthy discussion in *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 401, we rely on that exegesis for its analysis. "The traditional rationale given for [the common-law rule that a release of one joint tortfeasor operated as a release of all joint tortfeasors] was that where two or more tortfeasors acted in concert to cause an injury, the act of one became the act of all and a single cause of action, with each participant being liable for the entire loss sustained by the plaintiff. . . . This common law rule was widely criticized by courts and commentators as unjust because it served as a trap for unknowing plaintiffs, barring them from suing additional tortfeasors and, in some cases, from obtaining full relief for their injuries." (Citation omitted; internal quotation marks omitted.) Id., 406–407.

Intending to abolish "the common law rule that produced an involuntary discharge of joint tortfeasors"; (internal quotation marks omitted) id., 407; the legislature enacted § 52-572e, which reflects its "preference for preserving an unknowing injured party's opportunity to seek relief from responsible tortfeasors and a policy against enforcing an injured party's involuntary discharge of responsible tortfeasors." Id., 408. On the basis of this intent, we rejected the "flat bar" approach[8] in favor of the "intent rule," specifically, because the flat bar approach "perpetuates the inequities of the

---

[8] A flat bar rule holds that, "as a matter of law, a release provides for the discharge of all potential joint tortfeasors if it purports to discharge not only the named tortfeasors, but also any and all other parties." (Internal quotation marks omitted.) *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 408.

common law rule and contravenes the legislative preference, expressed in § 52-572e, for preserving the opportunity of an unknowing injured party to seek relief. By presuming that the actual intent of parties was fully incorporated into the release, the 'flat bar' rule precludes an injured party from seeking further relief from a nonsettling joint tortfeasor." Id., 409–10.

In *Sims*, we concluded that "the 'intent' rule best implements the goals of § 52-572e. By abrogating the common-law rule that a release of one tortfeasor discharges, by operation of law, all joint tortfeasors, § 52-572e preserves the right of the injured party to choose to release one or all joint tortfeasors in accordance with the intent of the negotiations between the injured party and the settling tortfeasor. Under § 52-572e, therefore, the contracting parties' intent, not the operation of a legal rule, determines the scope of a release. See *McInnis* v. *Harley-Davidson Motor Co.*, [625 F. Sup. 943, 949 (D.R.I. 1986)] ('intent' rule court noting importance of ascertaining parties' intent); *Hasselrode* v. *Gnagey*, [404 Pa. 549, 552, 172 A.2d 764 (1961)] ('flat bar' rule court noting that intent of the parties, as expressed within four corners of release, governs scope of release); *Bjork* v. *Chrysler Corporation*, [702 P.2d 146, 161 (Wyo. 1985)] ('specific designation' rule court noting the importance of ascertaining parties' intent)." *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 413.

Therefore, the intent of the legislature in enacting § 52-572e was to enable an injured party to secure payment of damages from one tortfeasor while maintaining the right to proceed against other tortfeasors who remain independently at fault *for their own wrongful acts that contributed to the injury*. This statute, in essence, allows the injured party's loss to be distributed among joint tortfeasors.

In deciding whether a master and a servant should be treated as a single tortfeasor or as joint torfeasors

for the purpose of distributing the loss by contribution, we recognize that they are both undoubtedly tortfeasors, and that the injured plaintiff may look for reparation from either the agent or the principal. "The rules of vicarious liability [however] respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a *single tortfeasor*. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover." (Emphasis added.) *Mamalis* v. *Atlas Van Lines, Inc.*, 364 Pa. Super. 360, 365, 528 A.2d 198 (1987), aff'd, 522 Pa. 214, 222, 560 A.2d 1380 (1989).

" 'Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.' " *Theophelis* v. *Lansing General Hospital*, 430 Mich. 473, 483, 424 N.W.2d 478 (1988), quoting *Dessauer* v. *Memorial General Hospital*, 96 N.M. 92, 108, 628 P.2d 337 (1981). Thus, a principal whose liability rests solely upon the doctrine of respondeat superior and not upon any independent act of the principal is not a joint tortfeasor with the agent from whose conduct the principal's liability is derived. *Stulginski* v. *Cizauskas*, 125 Conn. 293, 296, 5 A.2d 10 (1939). Essentially, aside from the relationship between the parties creating the doctrine of vicarious liability, the principal is not a tortfeasor in the true sense of the word because he is not

independently liable based upon his own independent actionable fault. *Elias* v. *Unisys Corp.*, 410 Mass. 479, 481, 573 N.E.2d 946 (1991); *Theophelis* v. *Lansing General Hospital*, supra, 488–89. Consequently, there is no right of contribution, only indemnification. *Stulginski* v. *Cizauskas*, supra, 296; *Smith* v. *Foran*, 43 Conn. 244, 250 (1875).

The system of contribution among joint tortfeasors, of which our apportionment rules—General Statutes §§ 52-102b and 52-572h—are a key component, meets the problem of how to compensate an injury inflicted by the acts of more than one tortfeasor. Specifically, in enacting Tort Reform I and Tort Reform II to allow a tortfeasor to be responsible solely for his own percentage of negligence, the legislature effectively allowed for contribution among joint tortfeasors and removed the onus of the deep pocket theory. *Donner* v. *Kearse*, supra, 234 Conn. 666–69. The liability of the joint tortfeasor is direct because the tortfeasor actually contributed to the plaintiff's injury, and is divisible because the conduct of at least one other also contributed to the injury. Contribution and indemnification, however, are based on fundamentally different principles. Although both indemnification and contribution are based on equitable principles; *Lockwood* v. *Nagy Bros., Inc.*, 150 Conn. 691, 692, 186 A.2d 82 (1962); "indemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 412, 207 A.2d 732 (1965); *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 701, 535 A.2d 357 (1988).

Therefore, for this court to agree with the plaintiff that, in derogation of the common law, the legislature intended that a release of the agent would not discharge

the principal from liability, we would have to ignore these basic but significant differences between vicarious and joint liability. In the absence of a compelling reason to depart radically from established policy, we are reluctant to modify the common-law rule that a principal and agent are not joint tortfeasors in order to fall within § 52-572e. *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 379–80, 698 A.2d 859 (1997).

Additionally, to hold as the plaintiff urges, we would have to ignore the well settled principle that "when a plaintiff brings a claim against a principal based solely upon the tortious conduct of the agent, the plaintiff cannot recover any more compensatory damages from the principal than it could from the agent. 1 Restatement (Second), Agency § 217 B (2) (1958), and [2 Restatement (Second), supra] § 359 C (2); W. Seavey, Agency (1964) § 95 (D), p. 170. This is so because 'there is a logical inconsistency in a small judgment against the agent and a large judgment against the principal, in cases in which the fault is wholly that of the agent.' 1 Restatement (Second), supra, § 217 B, comment (c). Indeed, in such cases, it is error for the trier of fact to return a verdict for compensatory damages in a greater amount against the principal than against the agent. Id., § 217 B, comment (e).' " *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 503, 656 A.2d 1009 (1995).

The legislature is presumed to be aware of this court's decisions and, therefore, the common-law limitations on the principal's liability already in place. Against this background, were § 52-572e to apply to this case, its protections would make little sense. As previously expressed herein, § 52-572e was intended to enable an injured party to secure payment of damages from one tortfeasor while maintaining the right to proceed against other tortfeasors who remain independently at fault for their own wrongful acts that contributed to the injury. Because a plaintiff who brings a claim against

a principal based solely upon the tortious conduct of the agent and not on any independent wrongdoing on the part of the principal cannot recover any more compensatory damages from the principal than it could from the agent, § 52-572e, if applicable to the present case, could not accomplish its intended purpose.[9]

Courts in other states are split on the question of whether the release of the primarily liable employee also releases the employer who is vicariously liable. Some hold that their respective versions of the Uniform Contribution Among Tortfeasors Act (uniform act); 12 U.L.A. § 1 et seq. (1996); include vicariously liable defendants so that a principal is not released by the release of the agent. See, e.g., *Harris* v. *Aluminum Co. of America,* 550 F. Sup. 1024, 1030 (W.D. Va. 1982); *Harris* v. *Miller,* 335 N.C. 379, 398, 438 S.E.2d 731 (1994). Other courts faced with this issue, however, have concluded that their versions of the uniform act do not include vicariously liable defendants and that consequently, a valid release of the agent operates to discharge the employer. See *Bacon* v. *United States,* 321 F.2d 880, 884 (8th Cir. 1963); *Simpson* v. *Townsley,* 283 F.2d 743, 748 (10th Cir. 1960); *Bristow* v. *Griffitts Construction Co.,* 140 Ill. App. 3d 191, 195, 488 N.E.2d 332 (1986); *Anne Arundel Medical Center, Inc.* v. *Condon,* 102 Md. App. 408, 414, 649 A.2d 1189 (1994); *Kelly* v. *Avon Tape, Inc.,* 417 Mass. 587, 590, 631 N.E.2d 1013 (1994); *Elias* v. *Unisys Corp.,* supra, 410 Mass. 482; *Theophelis* v. *Lansing General Hospital,* supra, 430 Mich. 491; *Dickey* v. *Estate of Meier,* 188 Neb. 420, 424, 187 N.W.2d 385 (1972); *Horejsi* v. *Anderson,* 353 N.W.2d 316, 320 (N.D. 1984); *Mamalis* v. *Atlas Van Lines, Inc.,* 522 Pa. 214, 221, 560 A.2d 1380 (1989); *Craven* v. *Lawson,* 534 S.W.2d

[9] This is so unless, of course, the legislature also intended to abrogate the common law in this regard as well. There is no indication, nor has the plaintiff argued, that the legislature, in enacting § 52-572e, had intended to effect such a change.

653, 656–57 (Tenn. 1976). We find the reasoning of those courts faced with statutes identical to § 52-572e and holding that the plaintiff's release of an agent's liability extinguishes the principal's vicarious liability to be the more persuasive. See, e.g., *Anne Arundel Medical Center, Inc.* v. *Condon,* supra, 416 (defining "joint-tortfeasors" as " 'two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them' "); *Mamalis* v. *Atlas Van Lines, Inc.,* supra, 522 Pa. 219 (same).

Finally, we recognize the public policy established by the uniform act to encourage settlements. The plaintiff contends that an injured party will be reluctant to settle with and release the agent if to do so means that he simultaneously extinguishes his cause of action against the principal. The agent, however, even after settlement with the injured party, would remain liable for indemnification to the principal. *Stulginski* v. *Cizauskas,* supra, 125 Conn. 296. Therefore, contrary to the plaintiff's assertion, the reality is that, by reading § 52-572e to permit an injured party to maintain an action under the doctrine of respondeat superior against the principal, despite his release of the agent, the court would be *discouraging* settlements because the agent, who would remain liable to indemnify the principal, would be disinclined to reach a settlement with the injured party. This scenario would be wholly abortive of the intended purpose of the release if it went no further than to protect the employee against a direct action by the injured party but afforded no protection against an action over by his employer. *Simpson* v. *Townsley,* supra, 283 F.2d 748. Only if protected from further liability would the agent be likely to settle. Furthermore, we do not believe that the legislature intended such a circuitous procedure. The result of our interpretation of § 52-572e avoids the indemnity cycle and ensures the

released tortfeasor that he has " 'bought his peace.' " *Horejsi* v. *Anderson*, supra, 353 N.W.2d 320. By holding that § 52-572e does not apply to vicariously liable defendants, the release of the agent removes the only basis for imputing liability to the principal.[10]

The judgment is affirmed.

In this opinion NORCOTT, PALMER and PETERS, Js., concurred.

PETERS, J., with whom NORCOTT and PALMER, Js., join, concurring. The majority opinion exonerates the defendant, the New Haven Register, Inc., from any liability to an injured tort claimant, despite the tort claimant's apparent intent to release only the defendant's employee, the person who negligently had caused his injury. If the payment received from the employee and her insurer did not cover the entirety of the damages caused by the employee, the tort claimant will not be able to recover for all of his losses.

I cannot and do not dispute the logic of the majority's reasoning that this unhappy result follows from our common law and from the language of General Statutes § 52-572e. The plaintiff has not asked us to undertake a revision of the common law. The statute cannot easily be stretched to accommodate the plaintiff's case. I therefore agree, reluctantly, with the majority's judgment. I am writing separately to urge legislative inquiry into whether, as a matter of public policy, the result that we reach is one that should be sustained.

---

[10] Although at common law a release of one joint tortfeasor released the other tortfeasors, a covenant not to sue did not. *Bonczkiewicz* v. *Merberg Wrecking Corp.*, 148 Conn. 573, 581, 172 A.2d 917 (1961); *Bridgeport-City Trust Co.* v. *Hirsch*, 119 Conn. 586, 589, 178 A. 423 (1935); *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 79, 86, 92 A. 883 (1915). Because the present case did not involve a covenant not to sue, this opinion does not have any impact on the viability of that mechanism as a means by which an injured party may seek full recovery against the employer after collecting a portion of his damages from the employee.

We have no hard facts of record to inform us about the consequences of today's decision. Among the matters about which we are ignorant, two unknowns strike me as particularly significant.

We do not know whether a covenant not to sue a tortfeasor, which would preserve an injured claimant's rights against a third party employer, is a viable option in fact. Injured parties must negotiate not only with the tortfeasor but also with the tortfeasor's insurer. In settlement negotiations, the insurer undertakes to assess the strengths and weaknesses of the injured party's claim. It is possible, however, that, as part of that assessment, the insurer will be mindful of the probability that its decision about the terms of a settlement will affect the future liability of another insurer standing behind the vicariously liable employer. Indeed, the tortfeasor's insurer in this case, for reasons unstated, refused to agree to describe its payment as a satisfaction of a binding arbitration award, but insisted on a broader document that was a "full release of all claims and demands." The release contained no express reference to the potential liability of the defendant employer.

We do not know whether, in real life, after a judgment against an employer based on vicarious liability, the employer or its insurer routinely, or only rarely, elects to sue the tortious employee for reimbursement. We may surmise that the tortfeasor's insurer will be called upon to contribute the face amount of its coverage for the employee's tort. Considering the virtues of harmonious labor relations in the workplace, however, the employer may not be motivated to pursue a direct remedy against the employee himself or herself. Constrained by the court record, we have no factual basis upon which even to speculate.

Several Connecticut cases have upheld the legality of an indemnity action by an employer against its

employee; see, e.g., *Stulginski* v. *Cizauskas*, 125 Conn. 293, 296–97, 5 A.2d 10 (1939); *Smith* v. *Foran*, 43 Conn. 244, 250–51 (1875); but they do not provide a basis for an accurate forecast of the likely conduct of employers confronted by a tight labor market in the late twentieth century. Indeed, in *Chase* v. *New Haven Waste Material Corp.*, 111 Conn. 377, 382, 150 A. 107 (1930), this court deplored "the fallacious assumption that since the employer has an action over against his employee [an action against the employer would] merely result in the employee paying back to him the recovery from the employer less the expenses of the litigation. . . . The assumption is also fallacious in that it assumes that there will be an actual recovery in fact against the employee." Although the "fallacious assumption" noted in *Chase* has not been rebutted, it continues to play a significant role in our common law.

One reasonable inference that probably can be deduced from what we know is that a severely injured claimant may have to endure possibly significant costs associated with a delayed recovery. To the extent that an injured claimant does not have reasonably timely and unconstrained access to a tortfeasor's insurer, that claimant is unlikely to receive funds in hand for a considerable period of time.

The tort claimant is in a position totally unlike that of an injured employee. If the injured party in this case had been the negligent employee herself, driving an automobile in the course of her employment, that negligent employee would have had prompt access to workers' compensation benefits. Because, however, the negligent employee, similarly engaged in conduct within the course of her employment, caused injury to an innocent third party, the result is different. Confined by the strictures of our common law, the tort claimant in this case has only restricted recourse to prompt recovery even of immediate expenses, such as medical

bills or home care services. Indeed, the tort claimant's inability readily to cover these costs may be exacerbated by injury-related reductions in his or her income.

Deference to common-law rules dictates today's decision, which probably leaves a tort claimant, no matter how severely injured, with a practicable remedy only against the tortfeasor's employer. It is too risky for such a tort claimant to settle with the tortious employee in the amount of the employee's insurance coverage. Immediate attempts at negotiations with the employer and its insurer may well be problematic. In part because of their greater exposure, and in part because they are only vicariously liable, these potential defendants are likely to have little incentive to reach an adequate early settlement with a tort claimant. It is routinely assumed that the prospect of a delayed jury trial, some four years in the future, increases the bargaining power of such potential defendants.

Because the uncertainties that I find troublesome are so broadly fact bound, they are not apt to find a ready resolution in the ordinary course of judicial proceedings. The legislature has repeatedly manifested its concern for the overall fairness of our tort law. See, e.g., General Statutes § 52-572e. I hope that the legislature will be able to find a place on its busy agenda for inquiry into the consequences and the desirability of today's decision.[1]

Accordingly, I respectfully concur.

BERDON, J., dissenting. In the course of her employment with the defendant, the New Haven Register, Inc.

---

[1] The Uniform Contribution Among Tortfeasors Act has been the progenitor of legislation, in other states, providing that a release, or a covenant not to sue, that has been given "to one of two or more persons liable in tort for the same injury" shall not discharge any other tortfeasors. See *Harris* v. *Aluminum Co. of America*, 550 F. Sup. 1024, 1029 (W.D. Va. 1992). As the defendant notes in its brief, the case law under these statutes is split.

(Register), Grazyna Ziolo severely injured the plaintiff, Reyes Alvarez. In the wake of this accident, the plaintiff was left totally disabled. The plaintiff and Ziolo's insurance carrier submitted the plaintiff's claim to high-low binding arbitration, which resulted in a finding that he had sustained damages in excess of $100,000, and pursuant to the agreement for arbitration the plaintiff was awarded $90,000.[1] Before it would pay the plaintiff, however, Ziolo's insurance carrier insisted upon and obtained a general release[2] that discharged itself, Ziolo,

---

[1] The arbitration agreement between the plaintiff and Ziolo's insurance carrier, the Progressive Insurance Company, provided, in pertinent part, as follows: "In the event the arbitrator renders an award in an amount less than THIRTY THOUSAND DOLLARS AND 00/100 ($30,000.00), then PRO-GRESSIVE, on behalf of the DEFENDANT, in exchange for a full release of all claims against the DEFENDANT, will pay the sum of THIRTY THOUSAND DOLLARS AND 00/100 ($30,000.00) to PLAINTIFF.

"In the event the arbitrator renders an award greater than NINETY THOU-SAND DOLLARS AND 00/100 ($90,000.00), it is agreed that PLAINTIFF will waive any amount in excess of ninety thousand dollars and 00/100 ($90,000.00), and will provide a full release to DEFENDANT in exchange for payment from PROGRESSIVE of NINETY THOUSAND DOLLARS AND 00/100 ($90,000.00).

"In the event the arbitrator renders an award in an amount of Thirty thousand dollars and 00/100 ($30,000.00) or more, but less than ninety thousand dollars and 00/100 ($90,000.00), PROGRESSIVE will pay on behalf of DEFENDANT, the amount of the award and PLAINTIFF will accept and grant full release in exchange therefore, in the sum of the award so rendered."

[2] The plaintiff's affidavit in support of his objection to the Register's motion for summary judgment contains the following explanation: "On or about March 31, 1997, Progressive Insurance Company paid me on behalf of its insured, Grazyna Ziolo, $88,849.91, as well as hospital liens, and sent a 'Full Release of All Claims and Demands' to my attorney. . . .

"I understood that the payment from the Progressive Insurance Company was on behalf of the operator, Ms. Ziolo. My attorney attempted to file a satisfaction of the arbitration to the Progressive Insurance Company, but the same was not accepted. . . .

"It was my understanding that the Progressive Insurance Company insisted that I sign their 'Full Release of All Claims and Demands' so that my attorney could turn over the next proceeds of the settlement. I never intended to release Ms. Ziolo's employer, the New Haven Register, Inc., nor did I ever accept any monies from the New Haven Register, Inc., in settlement of any claims.

"As a result of this accident, I have been rendered totally disabled . . . and have not been able to work since the date of the accident.

and a relative of Ziolo's from further liability (release).[3] Because this award did not fully compensate the plaintiff for his injuries, he sought additional compensation from the Register on the ground that it was also liable for the injuries that Ziolo had caused while she was acting within the course of her employment with the Register. The majority believes that, as a matter of law, the release in favor of Ziolo also releases the Register from liability. For the reasons set forth in this dissent, I disagree.

"At common law in Connecticut, a release of one joint tortfeasor operated as a release of all joint tortfeasors. See *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 77, 92 A. 883 (1915). . . . This common law rule was widely criticized by courts and commentators as unjust because it served as a trap for unknowing plaintiffs, barring them from suing additional tortfeasors and, in some cases, from obtaining full relief for their injuries. See, e.g., *McInnis* v. *Harley-Davidson Motor Co.*, 625 F. Sup. 943, 947 (D.R.I. 1986) (applying Rhode Island law); *Moore* v. *Missouri Pacific Railroad*, 299 Ark. 232, 239–40, 773 S.W.2d 78 (1989); *Bjork* v. *Chrysler Corporation*, 702 P.2d 146, 152–54 (Wyo. 1985); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 49, p. 333 ['the rule seems at best an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action']; R. Satter,

"Prior to the accident, I often had two jobs in order to support my family.

"I accepted the settlement from the Progressive Insurance Company because I needed the money due to my inability to work since August 2, 1995. I did not receive a fully favorable Notice of Decision from the Social Security Administration until September 18, 1997. Consequently, I had to live off my savings and was financially strapped.

"At the time of settlement with the Progressive Insurance Company, I fully intended to pursue a claim against Ms. Ziolo's employer, the New Haven Register, Inc. I do not feel that my claim has been fully satisfied by the settlement with the Progressive Insurance Company."

[3] See footnote 4 of the majority opinion for the full text of the release.

'Changing Roles of Courts and Legislatures,' 11 Conn. L. Rev. 230, 236 (1979); see also *Fulmore* v. *Coleman*, 41 Conn. Sup. 353, 354, 574 A.2d 1337 (1989) . . . .

"In 1969, the Connecticut legislature abrogated the common law rule by enacting General Statutes § 52-572e, which derives from the Uniform Contribution Among Tortfeasors Act. Public Acts 1969, No. 69-143. Section 52-572e provides in relevant part: '(b) A release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors *unless, and only to the extent, the release so provides.*' " (Citation omitted; emphasis in original.) *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 406–407, 623 A.2d 995 (1993).

The majority claims that the Register does not fall within the scope of § 52-572e because it is not a joint tortfeasor. According to the majority, "a principal whose liability rests solely upon the doctrine of respondeat superior and not upon any independent act of the principal is not a joint tortfeasor with the agent from whose conduct the principal's liability is derived. . . . [T]he principal is not a tortfeasor in the true sense of the word because he is not independently liable based upon his own independent actionable fault." (Citation omitted.) This analysis distorts the well settled contours of our common law in Connecticut.

More than one century ago, this court observed that "substantial justice is best served" by the rule that an employer is liable for the torts committed by its employee, a conclusion that "rests upon a public policy too firmly settled to be questioned." *Hearns* v. *Waterbury Hospital*, 66 Conn. 98, 126, 33 A. 595 (1895). Nearly seventy years ago, this court explained this doctrine as follows: "The liability of [an employer and its employee] exists without relation to that of the other; the [employee] for his own wrongful conduct; the [employer] for the wrongful conduct of his [employee]

while acting for him. *The breach of duty as to each is independent of the other.* In no sense is the [employer's] duty a derivative one." (Emphasis added.) *Chase* v. *New Haven Waste Material Corp.*, 111 Conn. 377, 380, 150 A. 107 (1930). This is so, the *Chase* court explained, for the following reason: "[E]very man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." (Internal quotation marks omitted.) Id. In short, "he who acts through another, acts by himself."[4] (Internal quotation marks omitted.) Id., 381. Accordingly, pursuant to *Chase*, the Register and its employee Ziolo are joint tortfeasors.

The facts of *Chase* make it unambiguously clear that the Register and Ziolo were, in fact, joint tortfeasors. The plaintiff in *Chase*—a minor child—was injured by a truck driven by his father in the course of his employment with the defendant. Id., 378. The defendant claimed that, since the doctrine of parental immunity precluded the plaintiff from bringing suit against his own father,[5] the plaintiff was also barred from bringing suit against his father's employer on a theory of respondeat superior. Id., 378–79. The *Chase* court rejected this argument, thus squarely holding that an employer's liability is independent from the liability of its employee.[6] Id., 380.

---

[4] The majority claims that "[t]he plaintiff contends that . . . Ziolo and the Register were not jointly liable . . . ." This is incorrect. In fact, the plaintiff frames the central issue as "whether the [Register] and [Ziolo] are joint tortfeasors," and the brief that the plaintiff submitted to this court contains an extensive discussion of why the Register and Ziolo are joint tortfeasors within the meaning of § 52-572e. The absurdity of the majority's claim is underscored by the fact that the plaintiff cites *Chase* in the brief that he submitted to this court.

[5] See, e.g., *Ascuitto* v. *Farricielli*, 244 Conn. 692, 697, 711 A.2d 708 (1998).

[6] The majority's rejection of our common law in the present case cannot be reconciled with the majority's adherence to the common law in analogous cases such as *Ascuitto* v. *Farricielli*, 244 Conn. 692, 711 A.2d 708 (1998).

Similarly, the Register's negligence is independent from Ziolo's negligence. Accordingly, the two fall within the scope of the definition of "joint tortfeasors" contained in § 52-572e. For this reason, the plaintiff's decision to release Ziolo from further liability "does not discharge the [Register] unless, and only to the extent [that], the release so provides." General Statutes § 52-572c (b). The release does not so provide. By its terms, the release discharges only Ziolo, a relative of Ziolo's, and Ziolo's insurance carrier. Although the release expressly binds the *plaintiff's* employer, it contains no parallel provision for Ziolo's employer.[7]

As the majority acknowledges, "the contracting parties' intent, not the operation of a legal rule, determines the scope of a release. . . . *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 413." (Citations omitted; internal quotation marks omitted.) The question of what the plaintiff intended to accomplish by executing the release presents—at a bare minimum—a genuine issue of material fact. In an affidavit, the plaintiff expressly stated that "I never intended to release [the Register], nor did I ever accept any monies from the [Register] in settlement of any claims."[8]

If there were any doubt about the conclusion that the release should not insulate the Register from liability, the legislative purpose behind § 52-572e would be

If there is any common thread connecting these cases, it appears to be that the majority will adhere to those portions of our common law that deprive injured parties of just compensation and reject those portions of our common law that accord such compensation. If there is a principled explanation for the jurisprudence that my colleagues have developed, I am at a loss to surmise what that explanation might be.

[7] The release, in pertinent part, provides: "I, Reyes Alvarez . . . does (do) hereby for my (our) heirs, executors, administrators, successors and assigns and any and all other persons, firms, *employers*, corporations, associations or partnerships release, acquit, and forever discharge Grazyna Ziolo, Jan Ziolo, and [Ziolo's insurance carrier] of and from any and all claims . . . ." (Emphasis added.)

[8] See footnote 2 of this dissenting opinion.

sufficient to dispel it. As previously discussed, § 52-572e was enacted to eliminate "an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action . . . ." W. Prosser & W. Keeton, supra, § 49, p. 333. By precluding the plaintiff from recovering damages from the Register, the majority has resurrected this antiquated hypertechnicality.

In her concurring opinion, Justice Peters asserts that "th[e] unhappy result [that the majority has reached] follows from our common law . . . ." This is incorrect.[9] As I have discussed, the *Chase* court recognized nearly seventy years ago that, pursuant to our common law, "[t]he liability of [an employer and its employee] exists without relation to that of the other; the [employee] for his own wrongful conduct; the [employer] for the wrongful conduct of his [employee] while acting for him. *The breach of duty as to each is independent of the other.* In no sense is the [employer's] duty a derivative one."[10] (Emphasis added.) *Chase* v. *New Haven Waste Material Corp.*, supra, 111 Conn. 380. Neither the majority nor the concurrence makes any attempt to reconcile the results of this case with *Chase.* Instead, both cite to *Chase* for a cockamamie theory that has nothing to do with the present appeal.

For all of these reasons, I would hold that the trial court incorrectly granted the Register's motion for summary judgment. Accordingly, I dissent.

---

[9] Justice Peters also asserts that the majority's "unhappy result follows . . . from the language of . . . § 52-572e." This is also incorrect, for the reasons that I have already explained.

[10] I apologize for quoting this passage from *Chase* twice. I repeat myself because, in light of this passage from *Chase*, the majority and the concurring opinions are bewilderingly wrong.