[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a personal injury action arising out of the failure of an allegedly defective hydraulic hose used on a well-drilling rig, which was operated by the plaintiff, Milton L. Korch, Sr., in the course of his employment. In his December 31, 1998 complaint, Korch alleges that on June 24, 1998, while operating a drilling rig, he was seriously injured when a hydraulic hose ruptured, causing hot fluid to spray onto him and setting the drilling rig a flame. Korch further alleges that the defective hose was fabricated by the defendant, Brooklyn General Repair, Inc. (BGR), for Korch's employer, Dalmik Well Drilling, Inc. As a result of the accident, Korch was hospitalized for several months, sustained severe burns, permanent scarring and severe nervous shock. Korch alleges that some of his injuries may be permanent in nature and may permanently impair his earning capacity.
On January 25, 1999, the court, Sferrazza J., granted Dalmik's motion to intervene in this action in order to recoup its worker's compensation benefits. On October 15, 1999, BGR filed a counterclaim for money damages, attorney's fees and indemnification against Dalmik, alleging that any injuries received by Korch were the direct and proximate result of Dalmik's negligence. On December 17 1999, Dalmik filed a motion to strike BGR's counterclaim on the ground that it is barred by the Workers' Compensation Act.[1]
Dalmik argues, in support of its motion to strike, that the exclusive remedy against an employer for workplace injury, absent an independent legal relationship that gives rise to a duty to indemnify, is pursuant to the Workers' Compensation Act. Accordingly, Dalmik argues, BGR's counterclaim is barred because Dalmik had no independent legal relationship with BGR and owed it no independent duty. CT Page 5741-gg
BGR objects to Dalmik's motion to strike, arguing that it has properly alleged an independent legal relationship between itself and Dalmik, and the full extent of that relationship should not be determined by a motion to strike. BGR further argues that "it is alleged that Dalmik hired [BGR] to make a hose for one of its well-drilling rigs. Implicit within that allegation is that, if true, [BGR] manufactured such hose and thus, a contractual relationship arose. . . . Accordingly, since the counterclaim implicitly alleges the existence of a contract between Dalmik and [BGR], based upon the Buonaducci (sic) decision[2] cited by Dalmik, the counterclaim for indemnification is legally sufficient in this matter." (BGR's Brief, p. 6.)
The court in Buonanducci v. Hoffman, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 571650 (March 17, 1998,Hennessey, J.), specifically held that "Hoffman's allegation of a contract, which creates an independent legal relationship between the parties, is a fact provable, and therefore, is sufficient to maintain the counterclaim. Whether the contract creates the necessary duty to indemnify that would preclude the operation of the exclusivity provision of the Workers' Compensation Act must be decided upon evidence presented at trial." Id. Based upon the following analysis, however, the court finds that a third party plaintiff must allege more than just an independent legal relationship in order to overcome the exclusivity provision of the Workers' Compensation Act.
"[I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest. . . ." (Internal quotation marks omitted.) Alvarez v. New Haven Register, Inc., 249 Conn. 709, 721,735 A.2d 306 (1999). "Ordinarily there is no right of indemnity or contribution between joint tortfeasors. . . . Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, we have distinguished between "active or primary negligence, ' and "passive or secondary negligence.' . . . Indemnity shifts the impact of liability from passive joint tortfeasors to active ones. . . . Thus, the common-law doctrine of indemnification permits a tortfeasor to assert a claim only against another liable tortfeasor." (Citations omitted; emphasis omitted; internal quotation marks omitted.)Crotta v. Home Depot, Inc., 249 Conn. 634, 642, 732 A.2d 767 (1999);Ferryman v. Groton, 212 Conn. 138, 142-43, 561 A.2d 432 (1989). CT Page 5741-gh
Accordingly, to maintain a common law action for indemnity, the party seeking indemnification is generally required to plead and prove: "(1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [the defendant's], was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [the defendant]; and (4) that [the defendant] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent." (Internal quotation marks omitted.) Skuzinski v. BouchardFuels, Inc., 240 Conn. 694, 698, 694 A.2d 788 (1997). In cases were a defendant seeks indemnification from an injured plaintiff's employer, however, an additional pleading requirement is mandated in order to overcome the exclusivity provision of the Worker's Compensation Act. SeeFerryman v. Groton, supra, 212 Conn. 144-45; Gianquitti v. Sheppard,53 Conn. App. 72, 80, 728 A.2d 1133.
"[W]hen the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution [or indemnification] is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive-remedy clause [of the Workers' Compensation Act]. But if the employer can be said to have breached an independent duty' toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be I allowed. . . .' 2A A. Larson, [Workmen's Compensation Law § 76]." (Brackets in original; internal quotation marks omitted.)Gianquitti v. Sheppard, 53 Conn. App. 72, 80, 728 A.2d 1133 (1999), quoting Ferryman v. Groton, supra, 212 Conn. 144-45. As the Supreme Court in Ferryman explained, the exclusivity provision of the workers' compensation statute bars a claim against the employer of an injured employee unless the claim is for indemnification and an independent legal relationship, giving rise to a duty to indemnify, can be found to exist between the employer and would-be indemnitee. See Ferryman v. Groton,
supra, 212 Conn. 144.
Since the counterclaim in this case sounds in indemnification against an employer, the dispositive issue is whether or not the counterclaim sufficiently alleges the existence of an independent legal relationship and duty between Dalmik and BGR. Such a sufficient allegation would bring the counterclaim within the Ferryman exception to the exclusivity provision of the Workers' Compensation Act.
In the first several paragraphs of its counterclaim, BGR summarizes the CT Page 5741-gi allegations of Korch's complaint. BGR then goes on to make allegations which include: Dalmik owned and was responsible for the maintenance and repair of the well drilling rig upon which the hydraulic hose was placed; Dalmik modified and altered the well drilling rig in a negligent and careless manner, and failed to notify others of the modifications and alterations; and Dalmik failed to inform BGR of the intended use of the hydraulic hose. BGR also alleges other acts of negligence committed by Dalmik, and alleges that Dalmik's negligence, rather than BGR's, was the direct and immediate cause of Korch's alleged injuries. BGR alleges that Dalmik was in control of the situation to the exclusion of BGR and that BGR did not know or anticipate that Dalmik would be negligent. Finally, BGR alleges that an "independent legal relationship" existed between it and Dalmik. The exact basis of that relationship is not specifically stated, however.
Although BGR argues that "[i]mplicit within [the] allegation [that Dalmik hired BGR to manufacture the hydraulic hose] is that, if true, [BGR] manufactured such hose and thus, a contractual relationship arose"; (emphasis added) (BGR's brief, p. 6.); such a contract, if it existed, would have been for the manufacturing of a hydraulic hose. The court fails to see how a contract to make a hydraulic hose, by itself, would create a duty on the part of Dalmik to indemnify BGR.
In Ferryman v. Groton, supra, 212 Conn. 145-46, the court explained why the allegations of the third party complaint in that case, if proven, would be sufficient to establish that the employer had an independent legal duty toward the third party plaintiff. The third party complaint alleged that "`[t]he electric substation was owned, operated, maintained and controlled by Electric Boat [the employer]. The City of Groton owned only the transformers and the metering equipment at the electrical substation.' [The complaint] further alleg[ed] that "Electric Boat controlled access to the electrical substation . . . [and] an employee and agent of Electric Boat, unlocked the gate surrounding the electric substation, making it possible for Ferryman to enter the area of the substation.'"
"Thus, [the Court stated] we see allegations by an owner whose property, while in the possession of another, is alleged to have caused the death of a third person whose access to the property has been furnished by the agent of the party in possession. When viewed in the light most favorable to the pleader, as required in addressing a motion to strike; Benson v. Housing Authority, [145 Conn. 196, 199, 140 A.2d 320
(1958); the complaint discloses the essentials of either a co-owner relationship, a bailor-bailee relationship or a lessor-lessee CT Page 5741-gj relationship, any one of which could contain the express or implied independent, legal duty that would serve to preclude the operation of the exclusive remedy provisions of [General Statutes] § 31-284." (Emphasis added.) Id., 146.
Although the Supreme Court has not had the opportunity to further address this issue in depth, many Superior Court decisions have considered the exclusivity of the Workers' Compensation Act and theFerryman case. These cases are very useful to the present analysis.
For example, in Mendillo v. Carpet Cleaning of Wolcott, Superior Court, judicial district of Waterbury at Waterbury, Docket No. 101738 (March 15, 1993, Sylvester, J.), the court granted the employer's motion to strike the indemnification counterclaim on the ground that the counterclaimant only alleged a contractual relationship and not an independent legal duty to indemnify the counterclaimant. The court explained that "Ferryman . . . did not simply hold that a relationship need be demonstrated, but [also held] that only if the employer can be said to have breached an independent legal duty toward the third party . . . [can] recovery in the form of indemnity be allowed. . . . Rodriguesv. Kachmarik, 6 [Conn. L. Rptr.] 312, 313 (April 15, 1992, Meadow, J.) (denying motion to strike special defense on grounds that third-party plaintiff's allegations demonstrated only an independent relationship and not an independent duty)." (Internal quotation marks omitted.) Id.
In Roundtree v. AM Manufacturing Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 338311 (September 27, 1995,Corradino, J.), the defendant bagel machine manufacturer impleaded the plaintiff's employer seeking indemnification on a theory of active-passive negligence. The manufacturer sought to establish an independent duty to indemnify on two theories: 1) the employer failed to properly train its employees in the use of the machine and allowed the machine to be used in a dangerous way; and 2) the employer modified the machine making it dangerous. Id. The manufacturer argued that its claim of indemnification was proper because the employer's actions created an implied duty to indemnify. Id. The court opined that "[t]his implied agreement to indemnify theory [advanced by the manufacturer] would swallow the protections afforded employers under the exclusive liability clause of the Workers' Compensation Act." Id.
Refusing to find an implied duty to indemnify between the manufacturer and the employer, the court in Fernandez held that "if injury is caused to a worker by the combination of the fact that machinery used by the worker is defective and that his employer didn't train him how to use the CT Page 5741-gk machinery or had the machinery used in a dangerous way, there's no reason to conclude that the exclusive liability clause of the act shouldn't operate to protect the employer. . . ." (Emphasis in original.) Id. The court also rejected the manufacturer's argument that a duty to indemnify arose because of the employer's modifications of the machinery. Id. Citing Roy v. Star Chopper Co., 442 F. Sup. 1019, 1019-21 (D.R.I. 1977), as the basis for rejecting this argument, Judge Corradino explained that the Roy court "held that the manufacturer would have a right to bring . . . an action where the employer-purchaser of the machinery not only had important responsibilities under the contract in assembling and designing [the product] but also expressly represented
that it would add certain safety devices aimed at preventing the injury on which the employee's suit was based." (Emphasis added.) Id.
There is no allegation in BGR's counterclaim that Dalmik expressly represented that it would use the hydraulic hose in a safe manner. Actually, the counterclaim states that Dalmik "failed to adequately inform the defendant of the uses and purposes [for which] it intended to use the hose." (BGR's Counterclaim, ¶ 6(i).) BGR makes sufficient allegations that Dalmik was actively negligent; those allegations, however do not implicitly or explicitly allege that Dalmik assumed a duty to indemnify BGR for those alleged acts of negligence.
Further, in Barry v. Ouality Steel Products, Inc., Superior Court, judicial district of Waterbury at Waterbury, Docket No. 153059 (October 13, 2000, McWeeny, J.) (28 Conn. L. Rptr. 369), the defendant filed an indemnification counterclaim against the intervening employer on the theory that an independent legal relationship existed between them because of warnings and instruction labels contained on the product, as well as a theory that, by purchasing its product, the employer impliedly agreed that it would use the product properly and in accordance with governmental regulations. Id., 370. The court held that there was no authority to support the counterclaimant's theories, and granted summary judgment stating that "[t]his court is charged with interpreting the law, not creating it." Id., 371.
In Schweighoffer v. Pesavento, Superior Court, judicial district of Bridgeport, Docket No. 315844 (February 2, 1996, Hauser, J.) (16 Conn. L. Rptr. 131), the plaintiff brought an action against the manufacturer of the liquid drain opener that had caused him serious injury. The manufacturer filed an indemnification counterclaim against the plaintiff's employer asserting that a legal relationship existed between them because of the purchase of the product and because of past business dealings. Id. The court explained that "`[t]he law does not independently CT Page 5741-gl impose a quasi-contractual duty upon a buyer to indemnify a manufacturer[-seller] for injuries sustained by the buyer's employees in the use of a defective product.' Therrien v. Safeguard ManufacturingCo., 180 Conn. 91, 95, 429 A.2d 108 (1980). Moreover, the Superior Court has held that the vendor/vendee relationship is insufficient to support an indemnity claim. Hajjar v. Frederick L. Bultman, Inc. Superior Court, judicial district of Danbury at Danbury, Docket No. 316244 (February 9, 1995, Leheny, J.) [13 Conn. L. Rptr. 434]." Id., 132. The court granted the employer's motion to strike, holding that an allegation of an independent legal relationship is not sufficient to support the existence of a duty to indemnify. Id.
In Fernandez v. Fusco Corp., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 061475 (September 3, 1999, Flynn,J.) (25 Conn. L. Rptr. 331), the plaintiff brought an action against the manufacturer of an electronically controlled door for injuries she sustained when the door closed on her. The manufacturer, in its counterclaim, alleged that it had provided safety and maintenance instructions to the employer and had attached a sticker to the door outlining the necessary daily maintenance to be performed. Id. The manufacturer argued that the employer had a duty to follow these instructions and that this created an independent legal relationship between them. Id. The court held that "a manufacturer's instructions for safe use and maintenance of a product to a product user do not create an "independent legal relationship' sufficient to form an exception to the bar of immunity for employer tort liability for personal injuries to its employee sustained in the workplace." Id. "[A] duty to indemnify does not exist simply because a party buys a certain product from a manufacturer." Id., 333. When there is no implicit or explicit agreement to indemnify . . . a manufacturer cannot seek indemnification from the employer." Id., 331. The court went on to explain that "[i]ndemnity agreements are usually determined by their express written terms . . . although a contract for indemnification may be found where a party unequivocally agrees by words, actions or conduct to assume liability for indemnification." Id., 333. Finding no such unequivocal agreement that the employer would assume liability for indemnification of the door manufacturer, the court granted the motion for summary judgment. Id., 331.
In Bremseth v. Connecticut Light Power Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 526545 (August 11, 1995, Corradino, J.), the court explained that the legal relationship necessary to establish the employer's independent duty to a third party need not always be based upon an independent contractual relationship, CT Page 5741-gm but may also be based upon other statutorily or judicially conceived creations of employer indemnity. "The important principle is whether the employer has imposed on itself through contract or has [had] imposed on it by statute an independent legal duty to the third party apart from any claim by a third party that the employer should be held responsible for its active negligence in causing the injury to the employee." Id. "Where the employer has specifically agreed to indemnify third parties . . . or the law imposes that duty, or an employer has entered into a legal relationship through contract or even the creation of the law which imposes on the employer a duty to indemnify and this duty arises independently of the act and even anteriorly to its passage then the third party's action should be allowed." Id.
"The important thing [of which the court must be mindful] then is not the existence of some kind of relationship between the employer and the third party, but the type of relationship that creates a duty to the third party by the employer to reimburse that third party where injuries are caused to an employee and the employee sues the third party." (Emphasis added.) Id. Judge Corradino went on to explain that the defendant in the Bremseth case was confusing "the issue of whether some kind of relationship existed . . . with the crucial question whether . . . some kind of relationship existed . . . [that created] a duty on [the employer's] part to indemnify the third party. . . ." (Emphasis in original.) Id.
This court concludes that BGR makes the same mistake here. Whether some type of implied contract existed because BGR fabricated a hydraulic hose for Dalmik, which gave rise to some type of legal relationship, is not the crucial question in cases seeking employer indemnity. The crucial question, as explained by Judge Corradino, is whether a legal relationship that created a duty to indemnify existed or, at least, is properly alleged. See id; see also Ferryman v. Groton, supra, 212 Conn. 146. Although BGR alleges there was an independent legal relationship between it and Dalmik, this allegation is not sufficient to support the existence of a duty to indemnify. The court finds that there are insufficient factual allegations in the counterclaim to overcome the exclusive remedy provision of the Workers' Compensation Act. Accordingly, Dalmik's motion to strike the counterclaim is granted.
Judgment may enter accordingly,
Foley, J.